Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                    )
IN RE:                              )    CASE NO.         07-30116 (LMW)
                                    )
   CC'S CLEANING AND SUPPLY, INC.,  )    CHAPTER          7
                                    )
         DEBTOR.                    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                    )
RONALD I. CHORCHES, TRUSTEE,        )    ADV. PRO. NO.    08-3012
                                    )
         PLAINTIFF                  )    DOC. I.D. NO.    1
                                    )
   vs.                              )
                                    )
DOM'S CLEANING AND PAINTING,        )
LLC, DOMENICO CIFARELLI and         )
CHERYAL CIFARELLI,                  )
                                    )
         DEFENDANTS.                )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**APPEARANCES**

| | |
|---|---|
| Gregory F. Arcaro, Esq. | Attorney for Plaintiff Chapter 7 Trustee |
| Brown, Paindiris & Scott, LLP | |
| 2252 Main Street | |
| Glastonbury, CT 06033 | |
| | |
| Peter L. Ressler, Esq. | Attorney for Defendants |
| Groob, Ressler & Mulqueen PC | |
| 123 York Street, Suite B | |
| New Haven, CT 06511 | |

**MEMORANDUM AND ORDER OF PARTIAL DECISION**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matter before the court is the complaint (A.P. Doc. I.D. No. 1, the "Complaint")[1] of the chapter 7 trustee (the "Trustee") in the above-referenced case against Dom's Cleaning and Painting, LLC ("Dom's"), Domenico Cifarelli ("Mr. Cifarelli") and Cheryal Cifarelli ("Mrs. Cifarelli").[2] This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, J.).[3] This memorandum constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.     **BACKGROUND**

Relevant background of this chapter 7 case is set forth in part II, *infra*. This adversary proceeding was commenced by the filing of the Complaint on February 7, 2008. The Defendants filed their answer on April 17, 2008. (*See* A.P. Doc. I.D. No. 16.)

The Complaint is stated in four counts as follows:

• First Count: Breach of Fiduciary Duty against the Individuals;

• Second Count: Fraudulent Transfer seeking to impose transferee liability upon Dom's;[4]

---

[1] References herein to the docket of this chapter 7 case appear in the following form: "Case Doc. I.D. No. __." References herein to the docket of this adversary proceeding appear in the following form: "A.P. Doc. I.D. No. __."

[2] Mr. and Mrs. Cifarelli collectively are referred to herein as the "Individuals." Dom's and the Individuals collectively are referred to herein as the "Defendants."

[3] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

[4] In his claim for relief, the Trustee seeks only a declaration of avoidance and not recovery of the Property (as hereinafter defined) or its value pursuant to 11 U.S.C. § 550(a). (Complaint at 5.) The Complaint also does not specify which of the Defendants is the target of the Second Count. However, the Trustee's Mandatory Brief (as hereafter defined) clarifies that the

- Third Count: Imposition of Successor Liability upon Dom's; and

- Fourth Count: Injunctive Relief against the Defendants.

The Trustee has formally withdrawn the First Count and the Fourth Count. (*See* A.P. Doc. I.D. No. 27 at 1-2.)

The matter came on for trial (the "Trial") on September 21, 2009.[5] At the Trial, the following witnesses testified for the Trustee and were cross-examined by the Defendants: Janet Tracy (a judgment creditor (or former judgment creditor) of the above-referenced debtor (the "Debtor")); Mr. Cifarelli; and Mrs. Cifarelli. At the Trial, the Trustee introduced certain documentary evidence into the record.[6] At the conclusion of the Trial, the court heard summations and ordered a post-trial briefing schedule. Both the Trustee's and the Defendants' post-trial briefs (individually, a "Mandatory Brief") were "mandatory, and failure to file may result in a waiver," (Tr. at 76:17-19 (order of the court)). The Trustee filed his Mandatory Brief (*see* A.P. Doc. I.D. No. 27); after obtaining two extensions (*see* A.P. Doc. I.D. Nos. 30 and 33), the Defendants did not file their Mandatory Brief.

---

Second Count seeks to impose "transferee" liability on Dom's pursuant to 11 U.S.C. §§ 548 and 550 for the value of the Property (as hereafter defined). (*See* Doc. I.D. No. 27 at 1, 3.) Because the Defendants have not filed the Mandatory Brief (as hereafter defined), the Defendants are deemed to have consented to such supplementation of the Complaint.

[5] A transcript of the Trial appears in the record as A.P. Doc. I.D. No. 26. References herein to that transcript appear in the following form: "Tr. at ___."

[6] References herein to such exhibits appear in the following form: "Trustee's Exh. ___." Those exhibits are lettered A, B, and D through J; there is no Trustee's Exh. C.

**II.     FACTS**

The Debtor was incorporated on or about July 1, 1995. (*See* Trustee's Exh. H.) For some time prior to the Petition Date (as hereafter defined), the Debtor was in the business of cleaning and painting. (*See* Tr. at 30 (testimony of Mr. Cifarelli).) For calendar year 2006, the Debtor had $277,637.00 in gross receipts from its business, gross profit in the amount of $156,265.00 and taxable income of $31,373.00 (after deducting $72,464.00 in officer compensation (among other things)). (*See* Trustee's Exh. H.) Mrs. Cifarelli is the president of the Debtor and the Individuals are its sole shareholders. (*See* Tr. at 28 (testimony of Mr. Cifarelli); 54-55 (testimony of Mrs. Cifarelli).)

On or about January 24, 2007, Janet Tracy and Dale Strand (collectively, the "Creditors") obtained a judgment (included in Trustee's Exh. B, the "Judgment") against the Debtor (for breach of contract and other things arising out of a painting job) in the amount of $21,374.40 (plus costs in the amount of $401.44). (*See* Trustee's Exh. B.) The Defendants stipulate to the fact of entry of the Judgment. (*See* Tr. at 7 (stipulation by Attorney Ressler).) The Judgment was entered on a default basis for failure to plead. (*See* Trustee's Exh. B.) The Defendants do not argue that the Judgment is other than valid and enforceable. Payment (the "Fund Payment") has been made to the Creditors in respect of the Judgment from the relevant (Connecticut) state guaranty fund (the "Fund"). (*See* Tr. at 14 (testimony of Janet Tracey).)

On January 19, 2007 (the "Petition Date"), the Debtor commenced this chapter 7 case by filing of its bankruptcy petition. (*See* Case Doc. I.D. No. 1.) The petition was signed by Mrs. Cifarelli in her capacity as the Debtor's president. (*See id.*) The Debtor's schedules listed assets in the aggregate stated amount of $8,725.00 and no liabilities. (*See id.*) However, the Debtor's

Schedule F (Creditors Holding Unsecured Nonpriority Claims) listed the Creditors as the holders of "disputed" claims in an "unknown" amount. (*See id.*) The Debtor ceased business operations on or around the Petition Date. (*See* Tr. at 44 (testimony of Mr. Cifarelli).) Mrs. Cifarelli testified that she caused the Debtor to commence this chapter 7 case because the Debtor could not pay the (then impending) Judgment. (*See* Tr. at 57 (testimony of Mrs. Cifarelli).) (*See also* Tr. at 36 (testimony of Mr. Cifarelli) (Judgment was final straw for the Debtor).)

On or about January 25, 2007 (six days after the Petition Date), Mr. Cifarelli formed Dom's as a Connecticut limited liability company. (*See* Trustee's Exh. D.) Mr. Cifarelli is the sole member of Dom's. Mrs. Cifarelli is Dom's bookkeeper and keeps its check register. (*See* Tr. at 25 (testimony of Mr. Cifarelli); 57-58 (testimony of Mrs. Cifarelli).) Dom's and the Debtor are/were in the same business and had the same customers and location. (*See* Tr. at 22 *et seq.* (testimony of Mr. Cifarelli); 61 (testimony of Mrs. Cifarelli).) In its first year of operation (*i.e.,* 2007), Dom's had gross receipts of $213,837.00, gross profit in the amount of $145,181.00 and net profit in the amount of $66,732.00. (*See* Trustee's Exh. E.) Dom's economic performance was not the result of advertising. (*See* Tr. at 29 (testimony of Mr. Cifarelli).)

On direct examination (by the Trustee), Mr. Cifarelli testified substantially as set forth above and that the only real difference between the Debtor and Dom's was the name of the company. (*See* Tr. at 29-30 (testimony of Mr. Cifarelli).) However, on cross-examination by the Defendants, Mr. Cifarelli qualified that testimony substantially as follows. The Debtor's restaurant cleaning business was steady. (*See* Tr. at 52 (testimony of Mr. Cifarelli).) However, the Debtor's painting and non-restaurant cleaning business tended to be on a non-repeat basis. (*See id.* (testimony of Mr. Cifarelli).) In any event, the non-restaurant cleaning business did not carry through to Dom's and

Dom's painting business has been a victim of the economic downturn. (*See* Tr. at 52-53 (testimony of Mr. Cifarelli).) The Debtor did not have any formal contracts with clients for cleaning services. (*See* Tr. at 31-32 testimony of Mr. Cifarelli).)

Mr. Cifarelli further qualified his direct examination testimony as follows:

A. [On cleaning jobs, w]e walk in in the morning, one or two o'clock, and vacuum and mop the floors and the bathrooms. When we [were] done with one, we went to the other one. And when we [were] done with the one, we went to the other one. So we do seven days a week, me and my wife.

Q. And these people give you keys to their businesses?

A. Yes.

Q. Because they trust you?

A. Correct.

Q. So you go in before hours or after hours. Is that correct?

A. After they close down, yeah.

. . .

Q. Okay. And at that time of filing the [Debtor's] bankruptcy, did you stop doing work?

A. I try to stop. I told these guys I can -- you know, I don't want to do it, but they told me I have to. They don't want nobody else but me.

Q. They only wanted you because they trusted you?

A. Because I been doing them -- like I said, I been doing for (inaudible) and also I know -- I know them personally.

. . .

Q. And the claim here is that you've taken all the customers from . . . [the Debtor] and moved them in, deprived . . . [the Debtor] of having the benefit of these customers. That's what the allegation is. Okay. Now, would any of the customers of Dom's stay with Dom's if you weren't there?

> A. No.
>
> Q. And could you tell the Court why they wouldn't?
>
> A. Because I'm very good friends with those people, and they trust me to -- to be in their building in the middle of the night, seven days a week.
>
> Q. Right. So is there any customer, in your opinion, that would have stayed with a Chapter 7 debtor who was shut down, and stayed with them until the trustee could find a buyer who was willing to buy the customer list of Dom's?
>
> . . .
>
> A. I don't think they would because, like I said, I'm very good friends with them, and the price is cheap. So I'm giving them a good price too, so they -- they want to stick with me. But I believe it more has to do with trust. Sometime the cleaning company, you never know who going to take in. That's what they used to tell me: We're going to stay with you no matter what . . . .
>
> Q. Because they trusted you with the keys to their business.
>
> A. Correct. I have done -- I have to do the alarms. I have their personal numbers, you know, some things happen in the middle of the night, and they wanted me in the building.
>
> Q. Right. So in -- in determining what value the customer list of . . . [the Debtor] would have being closed down, what is your opinion, since you owned . . . [the Debtor]?
>
> A. I'm sorry, mister. I don't understand the question.
>
> Q. What would you believe the value of the customer list of . . . [the Debtor] would be after the business was closed and then you left it?
>
> A. I don't believe it would be anything, because they don't want nothing to do with anybody else.
>
> Q. They wanted to do with you?
>
> A. Correct.

(Tr. at 32:11– 34:3, 37:2– 39:25 (testimony of Mr. Cifarelli).)

### III. ANALYSIS

#### A. Standard of Proof

Because the Defendants have failed to file their Mandatory Brief, they are deemed to have waived all their arguments. However, that does not mean that relief can be granted against them if there is no legal basis for it. *Cf. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241 (2d Cir. 2004) (holding that summary judgment is not automatically granted for failure to respond to summary judgment motion in accordance with local rules); *see also Goldberg v. Danaher,* 599 F.3d 181 (2d Cir. 2010) (holding that complaint is not automatically dismissed for failure to file brief in opposition to motion to dismiss in accordance with local rules). Accordingly, the court will treat the Defendants' failure to file their Mandatory Brief as the equivalent of a default and will hold the Trustee to a *prima facie* standard of proof. *Cf. Adams v. Bostick (In re Bostick),* 400 B.R. 348, 355 (Bankr. D. Conn. 2009) (*prima facie* standard used in default judgment context).

#### B. Fraudulent Transfer (Second Count)

The Second Count alleges that the Individuals "cause[d] to be transferred the valuable goodwill, customer lists and profit potential [collectively, the "Property"] of the Debtor to Dom's." (Complaint ¶ 18.) The Complaint further alleges that such "transfer is avoid[able] pursuant to 11 U.S.C. § 548(a)(1)(A) and/or B," (Complaint ¶ 20).

##### 1. Relevant Statutes

Bankruptcy Code § 548 provides in relevant part as follows:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or

within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business . . . .

11 U.S.C.A. § 548 (West 2010).

Recovery in respect of a fraudulent transfer is governed by Bankruptcy Code § 550. Bankruptcy Code § 550 provides in relevant part as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from–

>   (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>
>   (2) any immediate or mediate good faith transferee of such transferee . . . .

11 U.S.C.A. § 550 (West 2010).

### 2.     Application of Law to Facts

The Second Count alleges as follows:

>   18.  By their actions . . . , [the Individuals] . . . cause[d] to be transferred . . . [the Property] to Dom's.
>
>   19.  Dom's obtained the . . . [P]roperty without the return of reasonably equivalent value to the Debtor.
>
>   20.  The foregoing transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) and/or (B)

(Complaint ¶¶ 18-20.)

The court assumes (but does not decide) that the Trustee has made out a *prima facie* case of avoidability under Section 548. However, with respect to the Trustee's recovery case, the Trustee has failed to offer sufficient persuasive evidence of the value of the Property to make out a *prima facie* case for recovery of the value of the Property under Section 550. Accordingly, judgment for Dom's will be entered on the Second Count. In any event, the Trustee is deemed to have abandoned his claims against the Individuals on the Second Count as well as having "formally withdrawn" the First Count and the Fourth Count (*see* A.P. Doc. I.D. No. 27 at 1-2). The Third Count does not seek relief against the Individuals. Accordingly, judgment will issue in favor of the Individuals on the Complaint.

### C. Successor Liability (Third Count)

#### 1. Applicable (Connecticut) Law

As a general rule, "[t]he mere transfer of the assets of one corporation to another corporation or individual . . . does not make the latter liable for the debts or liabilities of the first corporation . . . ." (Internal quotation marks omitted.) *Chamlink Corp. v. Merritt Extruder Corp.,* 96 Conn. App. 183, 187, 899 A.2d 90 (2006). An exception to this principle exists "whenever the successor corporation more closely resembles a reorganized version of its predecessor than an entirely new corporate entity." (Internal quotation marks omitted.) *Kelly v. Kercher Machine Works, Inc.,* 910 F.Supp. 30, 36 (D.N.H. 1995). It is not the purpose of the exception to expose to liability any company that merely purchases assets from another company. *See Collins v. Olin Corp.,* 434 F.Supp.2d 97, 104 (D. Conn. 2006) (implying that the mere continuation exception should not be applied in a way that "likely would expose most assets purchasers to post-acquisition successor liability"). Instead, the mere continuation exception seeks to determine whether "the purchasing corporation [is] merely a 'new hat' for the seller." (Internal quotation marks omitted.) *Ladjevardian v. Laidlaw-Coggeshall, Inc.,* 431 F.Supp. 834, 839 (S.D.N.Y. 1977).

*Beriguette v. Innovative Waste Sys., Inc.,* No. CV054006895, 2009 WL 2450773, at *2 (Conn. Super. Ct. July 7, 2009) (modifications in original).

According to the Connecticut courts, the consideration of whether a "*de facto* merger" or a "mere continuation" of the former entity has occurred requires the weighing of four factors [individually, a "Factor" and, collectively, the "Factors"]:

(1) continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets and general business operations; (2) continuity of shareholders; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (4) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Collins v. Olin Corp.,* 434 F.Supp. 2d at 103 (*citing Peglar & Assocs., Inc. v. Professional Indemnity Underwriters Corp.*, No. X05CV9701608224S, 2002 WL 1610037, at *7 (Conn. Super. Ct. June 19, 2002)). "Not every one of these indicia must be established, however, but the court should apply more of a balancing test." *Peglar, supra* at *7.* Although a finding of "continuity" is required,

- 11 -

"significant" continuity (rather than complete continuity) under the circumstances is what is required. *See Kuhns Bros., Inc. v. Fushi Int'l, Inc.*, No. 3:06CV1917 (PCD), 2008 WL 2167091, at *6 (D. Conn. May 21, 2008) ("significant" shareholder continuity sufficient).

### 2. **Application of Law to Fact**

The court has little difficulty in concluding that the Trustee has made out a *prima facie* case that Dom's is but a "new hat" for the Debtor. With respect to the first Factor, there is *prima facie* evidence of continuity (or at least significant continuity) of management, personnel, physical location, assets (*e.g.,* customer lists and goodwill) and general business operations.[7] With respect to the second Factor, there is *prima facie* evidence of substantial continuity of shareholders (*i.e.,* equity interest holders).[8] With respect to the third Factor, there is sufficient *prima facie* evidence to meet the test. That is because the Debtor ceased doing business on or about the Petition Date and six days prior to Dom's formation. Once the Debtor became a Chapter 7 debtor, the Individuals lost the ability to dissolve the Debtor's corporate existence. *See Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581 (9th Cir. 1993), *superceded by statute on other grounds*, Pub. L. No. 105-277, § 603, 111 Stat. 2681, 2681-886 (1998) ("Where a [chapter 7] trustee is appointed, he may assume control and operation of the debtor's business. 11 U.S.C. § 1108. In such circumstances the debtor corporation's directors are completely ousted and retain virtually no management powers." (footnote omitted)). The fourth Factor does not apply here.

---

[7] At the Trial, the Defendants argued that the Property was worth nothing and, in effect, no transfer of the Property had taken place. By failing to file their Mandatory Brief, the Defendants are deemed to have waived that argument.

[8] The court does not attach any particular legal significance to the fact that the Debtor is a Connecticut corporation and that Dom's is a Connecticut limited liability company.

Weighing the Factors as applied here in the context of the highly suggestive timing of the shutdown of the Debtor and the formation of Dom's, the court concludes that (subject to a determination of the Damages Issue (as hereafter defined)) the Trustee has made out a *prima facie* case for imposition of successor liability upon Dom's.

### 3. **Damages Issue**[9]

During summation at the conclusion of the Trial, counsel for the Trustee disclosed as follows:

> I just learned this morning that the . . . [Fund] had reimbursed . . . the [C]reditor[s]. So I don't know what the standing of the Trustee is to collect an amount [*i.e.,* the Fund Payment] that's already been paid to the . . . [C]reditors.

(Tr. at 65:2-7 (remarks of Attorney Arcaro).) The court credits counsel's statement and will reopen the proceedings to allow the Trustee to clarify and/or establish his standing (if he can). The court also reserves to those reopened proceedings the issue of whether attorney's fees are a proper element of successor liability. (*See* Doc. I.D. No. 27 at 9-10.)[10]

## IV. **CONCLUSION**

For the reasons set forth above, the court concludes that (1) judgment shall enter for the Individuals on the Complaint and the Trustee shall take nothing as against the Individuals by the Complaint and (2) judgment shall enter for Dom's on the Second Count of the Complaint. A conforming (partial) judgment will issue. The court concludes that successor liability should be

---

[9] The issues referred to below are referred to herein as the "Damages Issue."

[10] Counsel for the Trustee raised the issue of punitive damages in his summation at the Trial. (*See* Tr. at 68 (remarks of Attorney Arcaro).) However, the Trustee has failed to brief that issue and it is deemed waived.

imposed upon Dom's under the Third Count of the Complaint for the debts of the Debtor (subject to determination of the Damages Issue). A separate order will issue reopening these proceedings as to the Damages Issue only and scheduling an evidentiary hearing with respect thereto.

It is **SO ORDERED**

Dated: May 26, 2010                                    BY THE COURT

                                                       Lorraine Murphy Weil
                                                       Chief United States Bankruptcy Judge